# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| **BB ENERGY LP,** § | |
| § | |
| § | |
| **Plaintiff,** § | |
| **v.** § | **CIVIL ACTION NO. 3:07-CV-0723-O** |
| § | |
| **DEVON ENERGY PRODUCTION** § | |
| **COMPANY LP,** § | |
| § | |
| **Defendant.** § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are:

1. Defendant's Motion for Partial Summary Judgment (Doc. # 100) filed February 29, 2008 ("Def. MSJ");

2. Defendant's Brief in Support of Motion for Partial Summary Judgment (Doc. # 101) filed February 29, 2008 ("Def. Br. in support of MSJ");

3. Appendix of Exhibits to Defendant's Motion for Partial Summary Judgment and Brief in Support (Doc. # 102) filed February 29, 2008 ("Def. App.");

4. BB Energy's Response to Defendant's Motion for Partial Summary Judgment (Doc. # 121) filed March 20, 2008;

5. Brief and Memorandum in Support of BB Energy's Response to Defendant's Motion for Partial Summary Judgment (Doc. # 122) filed March 20, 2008 ("Pl. Resp.");

6. BB Energy's Appendix of Exhibits to BB Energy's Response to Devon's Motion for Partial Summary Judgment and Brief in Support Thereof (Doc. # 123) filed March 20, 2008;

7. Defendant's Reply and Brief in Support of Motion for Summary Judgment (Doc. #

136) filed April 4, 2008 ("Def. Reply");

8. BB Energy's Motion for Partial Summary Judgment (Doc. # 103) filed February 29, 2008 ("Pl. MSJ");

9. Brief and Memorandum in Support of BB Energy's Motion for Summary Judgment (Doc. # 104) filed February 29, 2008 ("Pl. Br. in support of MSJ");

10. BB Energy's Appendix of Exhibits to BB Energy's Motion for Partial Summary Judgment (Doc. #s 105-112) filed February 29, 2008 ("Pl. App.");

11. Defendant's Response to Plaintiff's Motion for Partial Summary Judgment (Doc. # 116) filed March 20, 2008;

12. Defendant's Brief in Support of Response to Plaintiff's Motion for Partial Summary Judgment (Doc. # 117) filed March 20, 2008 ("Def. Resp. Br.");

13. Appendix of Exhibits to Defendant's Brief in Support of Response to Plaintiff's Motion for Summary Judgment (Doc. # 118) filed March 20, 2008;

14. BB Energy's Reply Brief to Defendant's Brief in Support of Response to Plaintiff's Motion for Partial Summary Judgment (Doc. # 134) filed April 4, 2008 ("Pl. Reply");

15. Defendant's Objections, Motion to Strike Certain Portions of Appendix Filed as Docket Entries 105 through 110 and Brief in Support (Doc. # 119) filed March 20, 2008;

16. Appendix of Exhibits to Defendant's Objections, Motion to Strike Certain Portions of Appendix Filed as Docket Entries 105 through 110 and Brief in Support (Doc. # 120) filed March 20, 2008;

17. Defendant's Objections, Motion to Strike Certain Portions of Appendix Cited by Plaintiff and Brief in Support (Doc. # 135) filed April 4, 2008;

18. BB Energy's Response to Defendant's Objections and Motion to Strike Certain

Portions of Appendix Filed as Docket Entries 105-110 and Brief in Support (Doc. # 133) filed April 4, 2008; and

19. Defendant's Reply and Brief in Support of Objections and Motion to Strike Certain Portions of Appendix and Brief in Support (Doc. # 148) filed April 21, 2008.

Having review the pleadings, evidence, and the applicable law, the Court finds that Plaintiff's motion for partial summary judgment should be and is hereby DENIED. The Court further finds that Defendant's motion for partial summary judgment should be and is hereby GRANTED in part and DENIED in part.

## I. BACKGROUND

The crux of this dispute involves the interpretation of an identical provision in certain oil, gas and mineral leases. Plaintiff, BB Energy, LP ("BB Energy") initiated this suit against Devon Energy Production Company, LP ("Devon Energy") alleging that certain oil, gas and mineral leases between the parties have terminated. BB Energy specifically pleads claims of trespass to title, declaratory judgment, to quiet title and cloud of title, breach of contract, and for attorney's fees. *See* Doc. No. 76 (3:07-CV-0723-O) (N.D. Tex. Nov. 7, 2007). BB Energy is an assignee of all the oil, gas and mineral interests owned by Barbara King Pletcher in certain lands located in Johnson County, Texas and more particularly described in the lease. (Pl. App. at 119-123). Devon Energy brings counterclaims against BB Energy alleging wrongful repudiation, breach of contract, declaratory judgment, and attorney's fees. *See* Doc. No. 77 (3:07-CV-0723-O) (N.D. Tex. Nov. 21, 2007).

The basic facts relating to the oil, gas and mineral leases are undisputed. Barbara King

Pletcher and Mitchell Energy Company L.P.[1] entered into an Oil, Gas and Mineral Lease dated May 3, 2001, that covered Ms. Pletcher's undivided ½ interest in the minerals underlying approximately 2,450 acres of land located in Johnson County, Texas and more particularly described in the lease. (Pl. App. at 78-80). Concurrently, Carolyn King Kasper and Mitchell Energy Company L.P. entered into and Oil, Gas and Mineral Lease dated May 3, 2001, which covered Ms. Kasper's undivided ½ interest in the minerals underlying approximately 2,450 acres of land located in Johnson County, Texas and more particularly described in the lease.[2] (Pl. App. at 113-116). To clarify, Barbara King Pletcher and Carolyn King Kasper each own an undivided ½ interest in the surface land, and the minerals underlying the 2,450-acre tract of land described in the leases. (Pl. MSJ at 7, 14; Def. Br. in support of MSJ at 5).

Additionally, John Edward King and Mitchell Energy Company L.P. also entered into and Oil, Gas and Mineral Lease dated May 3, 2001, which covered Mr. King's undivided 2/3 interest in the minerals underlying approximately 2,477.756 acres of land located in Johnson County, Texas and more particularly described in the lease.[3] (Pl. App. at 84-88). It is undisputed that Barbara King Pletcher owns a 1/3 interest in the minerals underlying this parcel of land. (Pl. MSJ at 8; Def. Br. in support of MSJ at 5).

The parties agree that the provisions in these leases are virtually identical. (Pl. MSJ at 9-

---

[1] It is undisputed that Devon Energy is the assignee of Mitchell Energy Company's interest in the leases that form the subject matter of this suit. (Def. App. at 1-3).

[2] Devon Energy refers to these leases collectively as the "King Sisters Lease"; BB Energy refers to it as "Barbara's Lease No. 1." Because the documents relating to permits to drill, etc., identify this lease as the King Sisters Lease, the Court will refer to it as such.

[3] Devon Energy refers to this lease as the "John Edward King Lease"; BB Energy refers to it as "Barbara's Lease No. 2." Because the documents relating to permits to drill, etc., identify this lease as the John Edward King Lease, the Court will refer to it as such.

10, 14; Def. Br. in support of MSJ at 6). In paragraph 2, the King Sisters Lease and John Edward King Lease specify they are for a primary term of 5 years and "as long thereafter as oil, gas, or other minerals is produced from or operations are conducted on said Land or land with which said Land is pooled hereunder." (Pl. App. at 78, 84, 113). The leases further contain provisions regarding shut-in royalties (paragraph 4), pooling authority (paragraph 5), drilling operations (paragraph 7), etc. (*Id.*). Each lease also contains an addendum with additional provisions numbered 14 through 22. (Pl. App. at 80, 87, 115). The addendum contains an introductory paragraph expressly stating that the provisions therein "shall supersede and govern the provisions in the printed form of this lease whenever such printed form is in direct conflict herewith." *Id.* The parties disagree on the proper interpretation of paragraph 17 in the addendum, which generally deals with the subject of duration of the lease in the event of pooling. Paragraph 17 is comprised of two sentences and states as follows:

> In the event a portion or portions of the leased premises is pooled or unitized with other lands so as to form a pooled unit or units, operations on, completion of a well upon, or production from such unit or units will not maintain this lease in force as to that portion of the leased premises not included in such unit or units.

> This lease may be maintained in force as to any portion of the leased premises covered hereby and not included in such unit or units in any manner provided for herein; provided however, that if at the end of the primary term or after the expiration of the primary term Lessee is then engaged in drilling or reworking operations on the leased premises or on acreage pooled therewith, or if Lessee has completed a well as a producer or dry hole anywhere on the leased premises or lands pooled therewith within ninety (90) days prior to the expiration of the primary term, this lease shall remain in full force and effect as to all non-unitized acreage so long as Lessee commences drilling operations on the leased premises or on acreage pooled therewith within ninety (90) days of the completion of such well as a producer or dry hole and conducts continuous operations thereon with no cessation of longer than ninety (90) days between the completion of drilling or reworking operations on a well and the commencement of such operations for the

next succeeding well.[4]

(Pl. App. at 80, 87, 115). BB Energy's primary argument is that the second sentence of paragraph 17 is a "continuous development" clause that applies to all the lands covered by the leases even when no portion of the leased premises has been pooled with other lands. (Pl. MSJ at 28; Pl. Br. in support of MSJ at 23). Based on its interpretation, BB Energy contends that Devon Energy failed to comply with the terms in paragraph 17, thus the King Sisters Lease and John Edward King Lease have terminated. (Pl. MSJ at 4-6). In contrast, Devon Energy argues that paragraph 17 applies only in the event that a portion of the leased lands are pooled with other lands. (Def. Resp. Br. at 1). Based on the fact that none of the lands under the King Sisters Lease or the John Edward King Lease were pooled with other lands or leases (Def. App. at 3-4), Devon Energy contends neither of the leases have terminated.

BB Energy moves for partial summary judgment on the grounds that the proper interpretation of paragraph 17 disposes of all its claims except for damages, judgment interest, attorney's fees and Devon Energy's counterclaims. (Pl. MSJ at 1). Devon Energy moves for partial summary judgment on the grounds that resolution of the issue regarding proper construction of paragraph 17 disposes of all of Plaintiff's claims, and entitles Devon Energy to summary judgment on its counterclaims for declaratory judgment and wrongful repudiation. (Def. Br. in support of MSJ at 1, n.1). The issues are now ripe for disposition.

## II.  SUMMARY JUDGMENT EVIDENCE

Devon Energy has filed two separate motions to strike/objections to the summary judgment evidence included in BB Energy's Appendix in support of its Motion for Partial

---

[4] For the sake of clarity and convenience, the Court breaks the paragraph into its sentences, but notes that the text in the lease is not divided in such a manner.

Summary Judgment. The Court does not need to evaluate the admissibility of evidence that is not necessary to its summary judgment ruling. *Liszt v. Karen Kane, Inc.*, No. Civ. A. 3:97-CV-3200-L, 2001 WL 739076, at *4 (N.D. Tex. June 26, 2001). "Often, challenged items of evidence will not affect the court's determination of the issues, and a resolution of admissibility will be unnecessary." *Id.* Here, the Court has not considered the majority of the exhibits included in BB Energy's Appendix. Further, the only evidence considered by the Court and cited in this opinion is undisputed. Accordingly, the court has excluded the summary judgment evidence of both parties *sua sponte* because it was not necessary to the determination of the questions of law raised in the cross-motions for summary judgment. Devon Energy's objections are therefore **OVERRULED** as moot, and the motions to strike are **DENIED** as moot. *See Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-CV-1866-D, 2006 WL 984690, at *1 n.6 (N.D. Tex. Apr. 14, 2006) (overruling as moot objections to evidence that is not considered by the Court in deciding motion for summary judgment).

### III. LEGAL STANDARD

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that

no genuine issue of material fact exists.  FED. R. CIV. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.  To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor.  *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "[T]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim."  *Id.*  (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).  Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

## IV.  ANALYSIS

BB Energy moves for partial summary judgment on all of its claims on the grounds that the leases terminated under its interpretation of the terms of paragraph 17.  (Pl. MSJ at 1).  BB Energy relies on essentially six arguments to support its interpretation of the leases:  (1) the

proper interpretation of the terms in paragraph 17 is that the "continuous development" requirement to maintain the lease is not conditioned upon pooling of the land; (2) the second sentence of paragraph 17 is language of special limitations of title with respect to duration of the leases; (3) the second sentence of paragraph 17 can be read in harmony with the first sentence by giving separate effect to the first sentence as is typical in "Pugh" clauses; (4) the phrase, "commencing drilling operations," in paragraph 17 means drilling of a well; (5) the phrase, "completed as a producer," means when a well is capable of producing in commercial or paying quantities; and (6) paragraph 17 supercedes and governs any language in paragraphs 2, 4, 7, and 10 that directly conflicts with the terms in paragraph 17 regarding the duration of the lease. (Pl. MSJ at 26-30). Devon Energy contends that BB Energy's interpretation of paragraph 17 is unreasonable and yields an absurd result. (Def. Br. in support of MSJ at 1; Def. Resp. 1-12).

Devon Energy moves for partial summary judgment on all of BB Energy's claims and its counterclaims on the grounds that the leases have not terminated and BB Energy's filing of the lawsuit constitutes wrongful repudiation. (Def. MSJ at 1-3). Because the common question of law in both motions for summary judgment is the proper interpretation of paragraph 17, the Court will address this issue first.

### A.    Rules of Interpretation Applied to Contracts

Both, BB Energy and Devon Energy, agree that the provisions in the King Sisters Lease and John Edward King Lease are unambiguous. (Pl. Br. in support of MSJ at 1; Def. Resp. Br. at 2). It is well-settled law that the interpretation of an unambiguous contract is a question of law for the court to decide. *Guidry v. Halliburton Geophysical Servs. Inc.*, 976 F.2d 938, 940 (5th Cir. 1992). An oil, gas and mineral lease is a contract that is interpreted based on the rules of interpretation applicable to contracts. *Tittizer v. Union Gas Corp.*, 171 S.W. 3d 857, 860

(Tex. 2005). A district court sitting in diversity will look at state law to provide the applicable rules of contract interpretation. *Matter of Haber Oil Co.*, 12 F.3d 426, 443 (5th Cir. 1994).

Under Texas law, a contract is not ambiguous when based on the plain language, the Court can give it a certain or definite legal meaning or interpretation. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003); *R & P Enterprises v. LaGuarta, Gavrel & Kirk*, 596 W.W.2d 517, 519 (Tex. 1980). When a contract is unambiguous, extrinsic evidence that creates an ambiguity or varies the meaning of the plain language is not considered. *Lewis v. East Tex. Finance Co.*, 146 S.W.2d 977, 980 (Tex. 1941). Further, a contract is not ambiguous simply because the parties advance different interpretations. *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). Here, none of the parties allege that the provisions in the leases are ambiguous. The Court agrees that they are not. Therefore, the Court's analysis is limited to looking at the plain language within the "four corners" of the leases to determine the proper interpretation of paragraph 17. *Luckel v. White*, 819 S.W.2d 459, 461-63 (Tex. 1991).

To determine the meaning of language in the leases, the Court is guided by well-established rules of interpretation. First, the Court's primary goal is to give effect to the parties' intent. *Id.* The applicable standard is the "objective intent" as evidenced by the language used in the leases, rather than the "subjective intent" of the parties. *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981). Additionally, the Court should interpret the lease as a whole and harmonize all the provisions within the lease so that none is rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Further, "[n]o single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id.* Finally, the Court should not construe a contract provision in a

10

manner that is unreasonable or absurd.  *See Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987) (stating courts should avoid, when possible, construction which is unreasonable, inequitable, and oppressive); *Pavecon, Inc. v. R-Com, Inc.*, 159 S.W.3d 219, 222 (Tex. App.—Fort Worth 2005, no pet.) (stating that when interpreting a contract, a court should avoid, if possible, construction that is unreasonable, oppressive, inequitable, or absurd).  With these rules of interpretation as its guide, the Court turns to review the provisions of the leases at issue.

### B.      Proper Construction of Paragraph 17

Each of the parties argue that their construction of paragraph 17 is reasonable.  BB Energy focuses its argument on paragraph 17 arguing that the first sentence is a "Pugh" clause, which is intended to limit the effect of production or operations on portion of land that is pooled with other lands or leases.  (Pl. Br. in support of MSJ at 9).  Further, BB Energy argues the second sentence is a "continuous development" clause intended to limit the duration of the lease when one of the express conditions specifically stated in sentence two occurs.  (*Id.* at 10).  While BB Energy recognizes that the two sentences are interrelated, it maintains they do not address the same subject.  (Pl. Br. in support of MSJ at 7).

Devon Energy argues that both sentences in paragraph 17 plainly state the terms apply only in the event of pooling.  (Def. Br. in support of MSJ at 14-15).  Further, Devon Energy submits that both sentences in paragraph 17 must be read together and harmonized with the other provisions in the lease in a manner that does not yield an unreasonable or absurd result.  (Def. Br. in support of MSJ at 16-17).  While Devon Energy agrees that the first sentence in paragraph 17 is a "Pugh" clause that acts to limit the duration of the lease if Devon Energy only drills a well on acreage that is pooled with other lands, it disagrees that the second sentence is a separate provision that applies to all the lands under the lease when no pooling has occurred.  (Def. Resp.

Br. at 7). Instead, Devon Energy argues that it is evident the pooling requirement in the first sentence is incorporated into the second sentence based on common principles of grammar and punctuation. (Def. Resp. Br. at 9). The Court agrees.

Paragraph 17 begins with the phrase: "[i]n the event a portion or portions of the leased premises is pooled . . . ." This express language unequivocally indicates the parties intended to limit its application such that if pooling occurred, production or operations on lands within the pooled units will not maintain the lease on the "portion of the leased premises not included in such unit or units." (Pl. App. at 80, 87, 115). Based on the choice of words and phrasing, the first sentence explicitly raises the question of how the lease can be maintained on that "portion of the leased premises" that was not pooled. (*Id.*). Sentence two seems to address that precise question. Sentence two provides the lease "may be maintained in force as to any portion of the leased premises . . . not included in such unit or units in any manner provided herein" with certain exceptions.[5] (*Id.*). Basic rules of writing establish that a paragraph should begin with a topic sentence, and that subsequent sentences within the same paragraph should relate to the same topic (subject matter). *See* Bryan A. Garner, The Winning Brief 93 (Oxford Univ. Press 1999). Here, the two sentences in paragraph 17 were written using the same specific phrases that evidences their relationship to the same topic. The use of the same phrase "portion of the leased premises not included in such units or units" in both sentences strongly indicates the parties

---

[5] The exceptions are stated in the remainder of sentence two: If at the end of the primary term or after the expiration of the primary term, Lessee was engaged in drilling or reworking operations anywhere on the lands covered by the lease, or had completed a well as a producer within ninety (90) days prior to the expiration of the primary term, then the lease is maintained as to the portion of the land not included in a pooled unit so long as Lessee began drilling operations on the leased premises within ninety (90) days of the completion of said well as a producer or dry hole and continued continuous operations with no cessation of longer than ninety (90) days between completion of drilling or reworking on a well and commencement of operations for the next succeeding well. (Pl. App. 80, 87, 115).

intended to limit the application of paragraph 17 to situations that arise when a portion of the leased premises is pooled with other land or leases.

BB Energy argues that the phrase "<u>any portion </u>of the leased premises covered hereby and not included in such unit or units" means <u>all</u> of the lands in the lease when no portion of the lease premises has been pooled. (Pl. MSJ at 28; Pl. Br. in support of MSJ at 10-12) (emphasis added). By definition, a "portion" can never equal "all." *See* Bryan A. Garner, The Oxford Dictionary of American Usage and Style 260 (Oxford Univ. Press 2000) (defining "portion" as a share) "It is an entity cut away from the whole." *Id.* Thus, BB Energy's suggested interpretation of the phrase regarding "portion of the leased premises . . . not included in such unit or units" does not comport with the plain, ordinary meaning of the term "portion." *Heritage Res. Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). For these reasons, the Court finds that based on the plain language and basic rules of writing, the sentences in paragraph 17 relate to the same subject matter: duration of the lease when a portion or portions of the leased premises are pooled.

The Court next examines whether this interpretation of paragraph 17 is in harmony with the other provisions in the lease so that none is rendered meaningless. As previously discussed, the second sentence of paragraph 17 states that with certain exceptions not relevant to the discussion here, the lease can be maintained on the portion or portions of land covered by the lease but not included in a pooled unit "in any manner provided in the lease." The fact that the parties expressly stated that the lease could be maintained "in any manner provided" in the lease confirms that paragraph 17 is limited in application and recognizes that other provisions in the lease also describe how to maintain the lease beyond the primary term. The Court should therefore harmonize paragraph 17 with other provisions in the lease relating to duration of the

lease.

BB Energy admits that paragraph 2, known as a "Habendum" clause prescribes the duration of the lease. (Pl. Br. in support of MSJ at 4). Paragraph 2 expressly provides that the lease is in effect for a primary term of (5) five years **and** "as long thereafter" as gas is produced or operations are conducted on the Land. (Pl. App. at 78, 84, 113). Additionally, BB Energy recognizes that paragraph 7 is a "drilling or operations" clause that extends the duration of the lease described in paragraph 2. (*Id.*). Paragraph 7 states:

> If, at any time or times after the expiration of the primary term, operations or production of oil, gas or other minerals on said Land or on acreage pooled therewith should cease from any cause and this lease is not then being otherwise maintained, this lease shall not terminate if Lessee commences or resumes operations within ninety (90) days thereafter and continues such operations or commences any other operations with no cessation of operations of more than ninety (90) consecutive days, and if such operation or other operations result in the production of oil, gas or other minerals, this lease shall remain in full force and effect for so long thereafter as oil, gas or other mineral is produced from said Land or acreage pooled therewith.

> It is understood and agreed that if, during the primary term hereof, all operations or production ceases on said Land or land on leases pooled therewith, this lease shall nevertheless remain in full force and effect during the paid-up primary term hereof.

> If, at the expiration of the primary term, oil, gas or other minerals is not being produced on said Land or on acreage pooled therewith and there are no operations on said Land or on acreage pooled therewith but operations or production ceased within 90 days of the expiration of the primary term, this lease shall not terminate if Lessee commences or resumes operations within ninety (90) days of said cessation of production or operations.

> If, after the expiration of the primary term, Lessee completes either (a) an oil well on land other than said Land and which other land and all or a portion of said Land has been included in a gas unit that was formed prior to the expiration of the primary term of this lease, or (b) a gas well on land other than said Land and which other land and all or a portion of said Land has been included in an oil unit that was formed prior to the expiration of the primary term of this lease, this lease shall remain in force so long as operations on said well or operations on any additional well on said Land or acreage pooled therewith are prosecuted with no

cessation of more than (90) consecutive days and if they result in the production of oil, gas or other mineral, so long thereafter as oil, gas or other mineral is produced from said Land or acreage pooled therewith.

For all purposes, herein, if an oil well on an oil unit, which includes all or a portion of said Land is reclassified as a gas well or if a gas well on a gas unit, which included all or a portion of the leased premises, is reclassified as an oil well, the effective date of such reclassification shall be considered as the date of cessation of production from said well.

If during the term of this lease, a well or wells should be drilled and completed as a producer of oil or gas in paying quantities and such well or wells are located on adjacent land and within 330 feet of and draining said Land, Lessee agrees, at its option to either (a) drill such offset well or wells, as an ordinary prudent operator would do under similar circumstances, or (b) release the affected acreage or stratum in accordance with the provisions of paragraph 6 herein; and, in this connection, it shall be considered that no drainage exists.

However, there shall be no express or implied duty of Lessee, with respect to the above options, unless such offset well or wells drilled by Lessee would be sufficiently productive to pay Lessee a profit over and above drilling completing and operating expenses.[6]

(Pl. App. at 78, 84, 113). Paragraph 7 provides several different manners in which a lease may be maintained beyond the primary term depending on the existence of specific facts. None of the described scenarios specifically address how the lease is maintained as to lands under the lease not included in a pooled unit. The Court finds the terms in paragraph 7 do not conflict or contradict the terms in paragraph 17. Further, paragraph 5, which provides the Lessee with pooling authority and defines the composition of such pooled units, does not address duration of the lease when pooling occurs. Therefore, the plain language of paragraph 5 does not conflict with the terms in paragraph 17.

In order for the Court to give effect to the language in paragraph 17 stating that the lease

---

[6] For the sake of clarity and convenience, the Court breaks the paragraph by sentences, but notes that the text in the lease is not divided in this manner.

can be maintained as to land not included in a pooled unit "in any manner provided herein," and to harmonize that language with the other provisions in the lease that address how the lease can be maintained beyond the primary term, paragraph 17 must be interpreted according to is self-limiting terms. The Court finds that this interpretation is reasonable and gives effect to all the provisions in the lease that relate to duration of the lease.

The Court further finds that if sentence 2 in paragraph 17 were interpreted as a separate and independent provision that applied to all the lands covered by the lease, such an interpretation would yield unreasonable and absurd results. Under such an interpretation, the "continuous development" requirement in paragraph 17 would impose a duty on Devon Energy to drill succeeding wells within 90 days of completion of a producing well or dry hole without providing any set limits on the number of wells that must be drilled to maintain the lease. BB Energy's answer to this issue is that the Railroad Commission Rules would govern the number of wells that could be drilled. (Pl. Reply Br. at 7-8). This proposal, however, is outside the four corners of the leases and would not give effect to the parties' intent as evidenced by the language in the leases. *Madeley*, 626 S.W.2d at 731. Consequently, BB Energy has failed to show that its interpretation of paragraph is reasonable, in harmony with the lease as a whole, and gives effect to the parties' intent. Thus, the Court finds that properly construed, paragraph 17 does not bear any relevance to whether the leases in question have terminated.

### C.  Termination of Leases

Notwithstanding its arguments that the leases have terminated under the terms of paragraph 17, BB Energy also argues the leases terminated under the provisions in paragraph 2 and 7 of the leases. (Pl. Resp. at 20-23). The issue of whether the leases have terminated turns on the application of the provisions in the lease to the undisputed facts.

## 1.    John Edward King Lease

The parties agree that Devon Energy was engaged in drilling operations for Well No. 1H on the John Edward King Lease prior to the expiration of the primary term and continued those operations without cessation until a producing gas well was completed on June 5, 2006. (Pl. MSJ at 5; Def. Br. in support of MSJ at 8; Pl. App. at 156-163; Def. App. at 2-3). Further, the parties agree that this well has continued to produce without cessation to date. *Id.* Applying these undisputed facts to the terms in paragraphs 2 and 7, results in the conclusion that the lease remains in effect because production has not ceased and the gas well continues to produce. The Court therefore finds that the John Edward King Lease has not terminated. Accordingly, BB Energy's motion for partial summary judgment on this issue is denied and Devon Energy's cross-motion for partial summary judgment on the same issue is granted.

## 2.    King Sisters Lease

With regard to the King Sisters Lease, BB Energy and Devon Energy agree that Devon Energy began operations to drill Well No. 2H on the lease prior to the expiration of the primary term and continued these operations until a well was drilled that was capable of producing gas on or about September 28, 2006. (Pl. MSJ at 5; Def. Br. in support of MSJ at 8-9; Pl. Resp. at 20-23; Pl. App. at 125-137; Def. App. at 2-3, 60-61). The disputed facts regarding this well pertain to the activities conducted during the period of time it was awaiting a connection to a pipeline. The overall question of whether the King Sisters Lease terminated is again resolved by applying the provisions in paragraphs 2 and 7 to the facts of the case. The parties' summary judgment evidence does not conclusively establish that there are no genuine issues of material fact on the question of whether the King Sisters Lease has terminated. The Court finds there are genuine issues regarding whether the well was shut-in on September 28, 2006, whether proper

17

shut-in payments were tendered, whether the well was completed on the date it was capable of producing gas in paying quantities or on the date that it was connected to a pipeline, and whether there was a cessation of operations. Accordingly, the Court denies both motions for partial summary judgment on this issue.

### D. Wrongful Repudiation

Devon Energy also seeks summary judgment on its wrongful repudiation claim. (Def. Br. in Support of MSJ at 22). In summary, Devon Energy's grounds in support assert that summary judgment as a matter of law is proper because (1) Devon Energy fully complied with all the terms of the lease and therefore the leases have not terminated; and (2) BB Energy's letter dated January 24, 2007 unequivocally stating that the leases had terminated constitutes a wrongful repudiation. (*Id.* at 22-23). BB Energy responds that summary judgment on this claim should be denied for several reasons: (1) wrongful repudiation is not a recognized cause of action; (2) wrongful repudiation is an affirmative defense; (3) the only consequence of a wrongful repudiation, is to excuse lessee from performance; (4) because wrongful repudiation is akin to estoppel, it does not apply if lessee continues performing; (5) wrongful repudiation requires more than a letter; and (6) the lawsuit filed in this case cannot serve as a basis for wrongful repudiation because any statements made therein are absolutely privileged. (Pl. Resp. at 30-36). In reply to the first ground in opposition asserted by BB Energy, Devon Energy argues that "wrongful repudiation constitutes a breach of the oil and gas lease" . . . and "a breach of contract." (Def. Reply at 12). However, Devon Energy did not cite any legal authority that establishes a wrongful repudiation claim is an independent claim recognized in Texas law. The Court will therefore first review whether wrongful repudiation is an authorized cause of action under Texas law.

Although its label is confusing, Devon Energy pleads a claim of wrongful repudiation[7] in count one of its pleading and a separate and independent breach of contract claim in count two.[8] *See* Doc. No. 77 (3:07-CV-0723-O) (N.D. Tex. Nov. 21, 2007) (Defendant's Answer to First Amended Original Complaint and Defendant's Original Counterclaim at 26-29). Further, Devon Energy specifically pleads damages "in the form of lost time value of money damages on natural gas that should have been produced from the Leases at an earlier date," costs, attorney's fees, and pre- and post-judgment interest. *Id.* at 27. Because Devon Energy moves for summary judgment on its own claim, it must conclusively establish "beyond peradventure *all* the essential elements of the claim." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). It follows that summary judgment would be improper if the claim is not cognizable under Texas law.

The doctrine of repudiation is an equitable doctrine created by courts to prevent a lessor who wrongfully repudiates a lessee's lease from profiting from the wrong. *Kothmann v. Boley*, 308 S.W.2d 1, 4 (Tex. 1958); *NRG Exploration, Inc. v. Rauch*, 671 S.W.2d 649, 652 (Tex. App.—Austin 1984, writ ref'd n.r.e.). To establish the doctrine of repudiation applies there must be evidence that the lease was in effect, and that lessor's notice of termination was "a clear, unequivocal challenge to the lessee's title." *Cheyenne Res., Inc. v. Criswell*, 714 S.W.2d 103, 105 (Tex. App.—Eastland 1986, no writ); *Exploracion De La Estrella Soloataria, Inc. v. Birdwell*, 858 S.W.2d 549, 554-55 (Tex. App.—Eastland 1993, no pet.). When shown to apply,

_____

[7] The Court notes that Devon Energy labeled this claim as "wrongful repudiation/breach of contract," but also pleaded a claim for breach of contract. Doc. No. 77 (3:07-CV-0723-O) (N.D. Tex. Nov. 21, 2007). The Court therefore concludes that Devon Energy pleads wrongful repudiation as a separate claim.

[8] Devon Energy has not moved for summary judgment on its breach of contract claim. *See* Def. Br. in Support of MSJ at 1 n.1 (stating "Devon also seeks summary judgment on its claims for declaratory judgment declaratory judgment [sic] and wrongful repudiation as set forth paragraphs 51-55.").

Texas courts have consistently held that the proper remedy is to declare the lease should remain in full force and effect for a period (after termination of the lawsuit) that allows the lessee to perform the conditions required to extend/maintain the lease. *Cheyenne Res., Inc.*, 714 S.W.2d at 105; *NRG Exploration, Inc.*, 671 S.W.2d at 653; *Tar Heel Energy Corp. v. Menking*, 621 S.W.2d 450, 451 (Tex. App.—Corpus Christi 1981, no writ).

The Fifth Circuit has recognized the "doctrine provides that a lessor may be estopped from asserting that a lease has terminated as a result of the lessee's nonperformance when the lessor has directly contributed to that nonperfomance." *Mitchell Energy Corp. v. Samson Res. Co.*, 80 F.3d 976, 982 (5th Cir. 1996); *see also NRG Exploration, Inc.*, 671 S.W.2d at 652; *Cheyenne Res., Inc.*, 714 S.W.2d at 105; *Tar Heel Energy Corp.*, 621 S.W.2d at 451; *Kothmann*, 308 S.W.2d at 4; *Kothman*n, 308 S.W.2d at 4. Similarly, Texas courts have held that the doctrine of repudiation "relieves the lessee from any obligation to conduct any operation on the land in order to maintain the lease in force." *Cheyenne Res., Inc.*, 714 S.W.2d at 105; *see also NRG Exploration, Inc.*, 671 S.W.2d at 652; *Birdwell*, 858 S.W.2d at 554-55; *Tar Heel Energy Corp.*, 621 S.W.2d at 451; *Mitchell Energy Corp.*, 80 F.3d at 982. In all of the Texas cases, Devon Energy relies upon, the doctrine of repudiation was used as a "defense to performance," not a affirmative claim upon which the lessee sued lessor for damages.

In sum, a review of Texas law concerning the doctrine of repudiation in the context of a dispute involving an oil, gas and mineral lease reveals that such theory has been applied as a defense to a lessor's claim that the lease has terminated. This leads the Court to the conclusion that Devon Energy may rely on wrongful repudiation as a defense to BB Energy's claim that the leases have terminated or may assert it as an element of Devon Energy's breach of contract claim, but it is not a legal basis for separate relief. When the lessee shows it relied on the acts of

the lessor and suspended operations pending a determination of the validity of the lease, the doctrine of repudiation prevents the lease from terminating while the lawsuit questioning the validity of a lease is pending. *Kothmann*, 308 S.W.2d at 4; *Mitchell Energy Corp.*, 80 F.3d at 982. Upon finding that the doctrine of repudiation applies, the courts have placed the parties back in their original position, that is, given the lessee an opportunity to perform the conditions necessary to maintain the lease. No Texas court has allowed a claim of wrongful repudiation to be raised as an affirmative claim for relief or awarded money damages based on a finding that the doctrine of repudiation applied. Accordingly, the Court finds that Devon Energy's motion for summary judgment on its wrongful repudiation claim should be denied.

### E.    OTHER CAUSES OF ACTION

Devon Energy also moves for summary judgment on BB Energy's claims for breach of contract and attorney's fees. (Def. Br. in support of MSJ at 25-27). Specifically, Devon Energy argues there is no evidence that it failed to comply with the terms of the lease and properly pay BB Energy the royalties due. (*Id.* at 25-26). Because BB Energy cannot prove its breach of contract claim, Devon Energy contends summary judgment should be granted on the claim for attorney's fees. (*Id.* at 26-17). BB Energy responds that the evidence in support of its breach of contract claim is a gas contract and or pricing information, which Devon Energy failed to produce despite repeated requests. (Pl. Resp. at 42-43).

Devon Energy expressly moves for a "no evidence" summary judgment on BB Energy's remaining claims. A no-evidence motion for summary judgment, however, is a pleading that may be filed in state court, but not federal court. *Casteneda v. Flores*, Civil Action No. 5:05-CV-0129, 2007 WL 1671742, at *2 (S.D. Tex. June 8, 2007). Under federal law, the party moving for summary judgment bears the burden of referring to the record to show the absence of

genuine issues of material fact.  *Id.*  Devon Energy relies solely on the language in the lease regarding the payment of royalties.  (Def. App. at 12, 65).  Devon Energy then asserts there is no evidence it failed to comply with the payment obligations of the lease.  (Def. Br. in support of MSJ at 26).  The Court finds that Devon Energy has failed to carry its summary judgment burden.  *See In re Hydro-Action, Inc.*, 341 B.R. 186, 193 (Bankr. E.D. Tex. 2006) ("While federal law clearly contemplates summary judgment in circumstances where there is truly no evidence of an essential element . . . the party moving for summary judgment must make some showing that evidence on an essential point is wholly lacking.").  For example, Devon Energy has not shown there is no evidence in the record regarding gas production and distribution of royalties that would support BB Energy's claim for breach of contract.  Accordingly, Devon Energy's motion for partial summary judgment on BB Energy's claims for breach of contract and attorney's fees is denied.

## V.  CONCLUSION

Based on the foregoing reasons, the Court finds there are no genuine issue of material fact with respect to BB Energy's claims seeking a declaration and other relief with regard to the John Edward King Lease.  Devon Energy is therefore entitled to judgment as a matter of law declaring that the John Edward King Lease is in full force and effect.  The Court further finds there are genuine issues of material fact with respect to BB Energy's claims on the King Sisters Lease, and neither party is entitled to summary judgment.  Additionally, the Court finds that Devon Energy is not entitled to judgment as a matter of law on its counterclaim of wrongful repudiation or on BB Energy's claims for breach of contract and attorney's fees.  Accordingly, Devon Energy's motion for partial summary judgment (Doc. # 100) is GRANTED in part, and DENIED in part; BB Energy's motion for partial summary judgment (Doc. # 103) is DENIED.

Finally, Devon Energy's motions to strike (Doc. #s 119, 135) are DENIED as moot.

**SO ORDERED** on this 23rd day of May, 2008.


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**